United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**

_____

No. 97-1090
_____

Transit Casualty Company,                     *
                                              *
    Plaintiff/Appellee,                   *        Appeal from the United
States
                                              *        District Court for the Western
    v.                                    *        District of Missouri
                                              *
Selective Insurance Company                          *
    of the Southeast,                         *
                                              *
    Defendant/Appellant.                  *


_____

Submitted: June 11, 1997

Filed: February 18, 1998
_____

Before WOLLMAN, BEEZER[1] and MURPHY, Circuit Judges.[2]

_____

[1]The Honorable Robert R. Beezer, United States Circuit Judge for the Ninth Circuit Court of Appeals, sitting by designation.

[2]This case was submitted to the panel on June 11, 1997, and an opinion was filed on September 5, 1997. On October 15, 1997, the panel granted rehearing on certain issues. See Transit Casualty Co. v. Selective Ins. Co. of the Southeast, 122 F.3d 1137 (8th Cir. 1997). Judge Henley, a member of the original panel, died on October 18, 1997. Pursuant to the court's random selection process, Judge Murphy was named to take Judge Henley's place on the panel.

The panel now files this amended opinion in place of the September 5, 1997, opinion.

BEEZER, Circuit Judge:

Selective Insurance Company appeals the district court's summary judgment holding that Selective may not offset its debt to Transit Casualty Company against the sums owed by Transit to Selective. The district court held that the contractual right of offset between the parties conflicted with the insolvency clause in the contracts and that granting the offset violated Missouri public policy. Accordingly, the court found that Selective owed the full sum of its obligations to Transit and awarded prejudgment interest. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291, and we reverse.

## I

This case involves two sets of contracts. The first set concerns three retrocession contracts which Transit entered into in 1983, with Fortress Re as the reinsurance underwriting manager on behalf of Selective.[3] Pursuant to these three contracts, Transit has submitted a number of claims that remain unpaid. As of the date of summary judgment in this case, Fortress, on behalf of Selective, owed Transit $183,390.98.

In the second set of contracts, Transit acted as reinsurer for Fortress. Between 1980 and 1985, Transit entered into ten reinsurance contracts with Fortress, acting on behalf of its member companies, one of whom is Selective. Although none of the

---

[3]Selective was formerly known as Southeastern Insurance Company.

member companies was named in those contracts, i.e., only Fortress was a signatory, it is undisputed that Fortress acted as Selective's agent in connection with those contracts.[4] Under these ten contracts, Transit owes the Fortress companies unpaid claims in the amount of $337,974.68. Selective was a member company for the time period covered by six of the contracts.

Transit went into receivership on December 3, 1985, and liquidation proceedings began in Missouri. Fortress filed claims in the Transit receivership proceeding under each of the ten reinsurance contracts. Eight of these ten claims were allowed by the receiver, for a total amount of $316,364.35. The parties have stipulated both to the amount of money Transit owes under the reinsurance contracts and to Selective's share of that amount; it is undisputed that Transit owes Selective $32,432.23.

The receiver for Transit subsequently brought this action against Selective in Missouri state court seeking recovery of the sums owed by Selective under the three retrocession contracts. Selective removed the action to federal court and pleaded as an affirmative defense that it had a right to offset the sums it owed to Transit against funds owed by Transit to Selective under the ten reinsurance contracts.

The retrocession contracts, under which Transit brought this action against

---

[4]In the parties' letter briefs submitted in connection with Selective's petition for rehearing, the parties agree that Fortress was Selective's agent. Selective repeatedly referred to Fortress as its agent. (See Selective Ltr. Brief passim.) Similarly, Transit conceded that Fortress acted as Selective's agent. Transit stated in its Letter Brief that "Transit agrees with Selective that Fortress Re was the only signatory to [the retrocession contract] and did so as Selective's authorized agent." (Transit Ltr. Brief at 2.) Transit also stated that "[a]lthough Selective did not produce this third party Agreement between the `member companies' of the pool of reinsurers and the underwriting agent Fortress Re, Transit does not contest that Fortress Re acted as Selective's agent." (Transit Ltr. Brief at 3, n.2.)

Selective, contain an insolvency provision.  The reinsurance contracts, under which Selective claims a right of offset, contain both an insolvency clause and an offset clause.

The district court granted summary judgment in favor of Transit, holding that the insolvency clause conflicted with the set-off clause in the reinsurance contracts, and that upon Transit's insolvency the insolvency clause governed the rights of the parties.  The district court further held that the insolvency clause did not grant an inter-contract set-off right and that, even if it did, such a set-off would be contrary to Missouri's Insurance Code and was void.


## II

We review the district court's grant of summary judgment de novo. Kielmele v. Soo Line R.R. Co., 93 F.3d 472, 474 (8th Cir. 1996).  In this diversity case, the interpretation of the insuring agreement is a matter of state law, General Cas. Ins. Co. v. Holst Radiator Co., 88 F.3d 670, 671 (8th Cir. 1996), and we review de novo the district court's interpretation of state law.  Salve Regina College v. Russell, 499 U.S. 225, 231 (1991).


Selective's appeal presents three issues for resolution: (1) whether the allowance of a set-off violates the Missouri Insurance Code; (2) whether the parties contracted to allow a set-off; and (3) whether Selective is entitled to a set-off in this case.  We answer the first question in the negative and the second in the affirmative, and hold that Selective may avail itself of the contractual right of set-off because the parties' obligations were mutual.

## A.

The first question presented by Selective's appeal is whether the offset of debts in insolvency violates the Missouri Insurance Code or otherwise violates Missouri

-4-

public policy.  If such a prohibition is discovered, any contractual right of offset is irrelevant.  Transit contends that the Missouri Insurance Code constitutes a comprehensive scheme for the resolution of the failed insurer's assets and that the Code does not condone set-offs.  Moreover, argues Transit, allowing set-offs would subvert the priority of creditors established in the Code.

Selective, on the other hand, argues that set-offs merely establish the bounds of the pre-receivership assets and that the Insurance Code governs only the distribution of those assets, rather than their definition.  We agree with Selective that nothing in the Insurance Code nor in Missouri common law indicates that Missouri rejects the right of parties to contract for a right to offset debts.

In 1892 the Supreme Court held that the right to assert set-off in insolvency was customary both statutorily and as a matter of equity.  Indeed, the Court stated that "where the mutual obligations have grown out of the same transaction, insolvency on the one hand justifies the set-off of the debt due upon the other."  Scott v. Armstrong, 146 U.S 499, 507 (1892).  The Court went on to hold that "[w]here a set-off is otherwise valid, it is not perceived how its allowance can be considered a preference, and it is clear that it is only the balance, if any, after the set-off is deducted, which can justly be held to form part of the assets of the insolvent."  Id. at 510.

The Supreme Court of Missouri subsequently dealt with the question of offset in an insurance insolvency proceeding.  The Court recognized the right to offset debts, but disallowed the offset because of the lack of mutuality of obligation.  Citing Scott v. Armstrong, the Missouri Supreme Court stated that the "right to assert set-off at law is of statutory creation, but courts of equity from a very early day have been accustomed to grant relief in that regard independently as well as in aid of statutes upon the subject."  Sturdivant Bank v. Stoddard County, 58 S.W.2d 702, 703 (1933).  Thus, the broad principle of offset in insurance insolvencies has been accepted by Missouri courts.  Missouri courts continue to allow offset in contractual disputes.  See

<u>Greenwood v. Bank of Illmo</u>, 782 S.W.2d 783 (1989); <u>Edmonds v. Stratton</u>, 457 S.W.2d 228 (1970).

    The Missouri Insurance Code establishes the priority of creditors in the case of an insurer insolvency.[5] This section, along with the remainder of the statute, dictates the order of distribution of the insolvent insurance company's assets at the time the receivership or liquidation order is entered. If, as is contemplated in <u>Scott v. Armstrong</u>, set-off defines the nature of the insolvent's assets, allowing set-off does not subvert the priority of creditors established by statute. Because the Missouri courts have accepted the right of parties to offset debts and have adopted <u>Scott v. Armstrong</u>, we believe that the Missouri Supreme Court would hold that a mutual set-off may constitute a pre-receivership asset that does not subvert the priority of creditors listed in the Insurance Code.

---

[5]Mo. Rev. Stat. § 375.700 (1997) provides:

> 1.Unless reinsurance of a dissolved insurer is effected and its assets conveyed to the reinsuring company as provided by law, and unless such insurer is being rehabilitated under other provisions of sections 375.010 to 375.1246, the receiver, under the direction of the court, shall apply the sums realized from the assets of such insurer in hereafter making any partial or final distribution, in the following order:
> (1)    To payment of all the expenses of closing the business and disposing of the assets of such insurer;
> (2)    To the payment of all lawful taxes and debts due the state and the counties and municipalities of this state;
> (3)    To the payment of policy claims;
> (4)    To the payment of debts due the United States;
> (5)    To the payment of the other debts and claims allowed against such insurer, and the unearned premiums and the surrendered value of its policies, in proportion to their respective amounts.

We are aware that the allowance of set-offs affects the nature of the claims allowed:

> Whereas the allowance of set-offs furthers some public policies, it may conflict with other public policies that guide the administration of insolvent estates: the prohibition of preferences (the preferential treatment of one creditor over another), and the guarantee of a pro rata distribution of estate assets. There is no question that in some circumstances, the application of set-off principles works to the advantage of one particular creditor, or class of creditors, and to the disadvantage of others. For nearly two thousand years, however, courts and legislatures have resolved the tension between these competing public policies in favor of set-offs.

Stephen W. Schwab et al., Onset of an Offset Revolution: The Application of Set-Offs in Insurance Insolvencies, 95 Dick.L.Rev. 449, 454 (1991). Acknowledging this tension, we hold that parties in Missouri may contract to offset mutual debts.

The allowance of set-off in Missouri insurance insolvencies does not contradict the Missouri Insurance Code and it does not otherwise violate Missouri public policy. There is no indication in Missouri case law that the right to set-off has been rejected. Moreover, to allow set-off aligns Missouri with almost all other states. See id. at App. A. Indeed, since Transit's insolvency, Missouri has enacted a set-off provision, an indication that set-offs likely did not violate public policy prior to the enactment. Mo. Rev. Stat. § 375.1198 (1997).

**B.**

Given that parties in Missouri are free to contract for a right of set-off, we next consider whether the parties did, in fact, bargain for a right of offset. We hold that the contracts at issue here allow for the set-off of mutual obligations.

The retrocession contracts, under which Transit brought this suit, do not contain a set-off clause. But the ten reinsurance contracts, under which Transit owes money

to Fortress Re, do:

> The parties may offset any balances (whether on account of premium, commission, claims, losses, loss adjustment expenses, salvage or other) due from one party to the other under this Contract or under any other Contract heretofore or hereafter entered into by the parties.

The district court found that the offset clause conflicted with the following insolvency clause:

> In the event of the insolvency of [Transit] it is understood and agreed that [the Fortress companies'] claim against [Transit] in the insolvency proceeding shall consist of all amounts owing to [the Fortress companies] from [Transit] on the date of the entry of a receivership or liquidation order, . . . including but not limited to, liquidated and unliquidated claims and claims undetermined in amount on said date, all such claims being deemed hereby to be in existence as of such date less those amounts owing from the [Fortress companies] to [Transit] on the date of the entry of the aforesaid receivership or liquidation order.

We disagree with the district court that the clauses cannot operate simultaneously. In interpreting a contract under Missouri law, we attempt to harmonize the various provisions of a contract, and we read them to avoid a conflict. Phillips v. Authorized Investors Group, 625 S.W.2d 917, 921 (Mo. App. 1981). If the terms of the contract are clear, we apply those provisions as written. We find that the contract here is clear and that there is no necessary conflict between the two clauses.

The insolvency clause stipulates that, in the event of Transit's insolvency, the Fortress companies' claims would be deemed to be in existence as of the date of insolvency and that the amount owed by the Fortress companies to Transit would be deducted from the claimed amount. This appears to be a set-off clause within the insolvency clause. Transit maintains that it covers only debts under the reinsurance

-8-

contracts and does not apply to obligations under other contracts, as the set-off clause does.

We are unconvinced by Transit's argument. The two clauses may be read harmoniously, and there is no reason not to do so in this case. The insolvency clause does not clearly limit its offset provision to sums owed under the reinsurance contract; the offset clause clearly does apply to sums owed under other contracts between the parties. Accordingly, the reinsurance contracts provide for an inter-contract right of set-off. We see no reason why the insolvency clause and the set-off clause cannot operate simultaneously. Together, these two clauses manifest an intent by the parties to allow set-off of mutual obligations.

### III

We next consider whether Selective may set-off its debt to Transit. In order for a set-off to be applied, the parties must be "mutually indebted." Sturdivant Bank, 58 S.W.2d at 704. "It is a rule of practically universal application that to warrant a set-off at law the demands must be mutual and subsisting between the same parties, due in the same capacity or right, and there must be mutuality as to the quality of right." Id. at 703-04. In other words, "the mutuality of capacity requirement means that in order for debts to be set off in an insurance insolvency, the parties between whom the set-off is to be made must stand in the same relationship or capacity to each other." Schwab, 95 Dick. L. Rev. at 478.

It is undisputed that Fortress acted as Selective's agent with respect to the reinsurance contracts. More specifically, Selective was a partially disclosed principal with respect to the reinsurance contracts. A "partially disclosed principal" is a party whose existence, but not identity, is disclosed to the other parties to the contract. Restatement (Second) of Agency § 4(2) (1958). The Restatement (Second) of Agency provides that "[t]he other party to a contract made by an agent for a disclosed or partially disclosed principal . . . is liable to the principal as if he had contracted directly

with the principal." Restatement (Second) of Agency § 292 (1958); <u>cf. Quick Erectors, Inc. v. Seattle Bronze Corp.</u>, 524 F. Supp. 351, 356 (E.D. Mo. 1981) (citing <u>Sonnenfeld Millinery Co. v. Uhri</u>, 83 S.W.2d 168, 169 (Mo. Ct. App. 1935)) (a nonfraudulently undisclosed principal may enforce a contract under Restatement (Second) of Agency § 304); <u>Phillips v. Hoke Constr., Inc.</u>, 834 S.W.2d 785, 788-89 (Mo. Ct. App. 1992) (citing <u>Sonnenfeld Millinery Co.</u>). Thus, although only Fortress and Transit are signatories to the reinsurance contracts, Selective, as a partially disclosed principal, may bring a cause of action against Transit under those reinsurance contracts; similarly, Transit may sue Selective under the retrocession contracts. <u>See</u> <u>Sturdivant Bank</u>, 58 S.W.2d at 704 ("If defendant's demand is due and payable while plaintiff's is not . . . it seems clear that the parties are not mutually indebted."); <u>see also Greenwood v. Bank of Illmo</u>, 782 S.W.2d 783, 786 (1989), quoting <u>Dalton v. Sturdivant Bank</u>, 76 S.W.2d 425, 426 (1934) ("It is a general rule of practically universal application at law that, to warrant a set-off, the demands must be mutual and subsisting between the same parties and must be due in the same capacity of right. Equity usually follows the law, and it is held as a general rule that in equity as at law the right of set-off is reciprocal, and only mutual claims and such as are in the same capacity or right can be set off.") In short, Selective contracted both as reinsurer and reinsured with Transit. Accordingly, Transit and Selective are mutually indebted, and Selective prevails on its affirmative defense of set-off.

**IV**

Selective finally contends that the district court erred in awarding prejudgment interest from 90 days after each demand Transit made for payment of claims under the retrocession contracts. Selective argues that the debts were not liquidated until February 17, 1995, the date the parties stipulated to the amount of insurance proceeds at issue. The district court found that Transit had made demands for proceeds from claims due every year since 1986 and awarded prejudgment interest from 90 days after each demand. Whether the district court had authority to grant prejudgment interest is a question of state law which we review de novo. <u>Latham Seed Co. V. Nickerson</u>

-10-

American Plant Breeders, Inc., 978 F.2d 1493, 1501-02 (8th Cir. 1992).

The Missouri Code provides: "Creditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and demand of payment is made." Mo. Rev. Stat. § 408.020 (1997)  In Missouri, prejudgment interest will be awarded only on liquidated claims, and a claim is liquidated when it is "fixed and determined or readily ascertainable by computation or recognized standard."  Schnucks v. Carrollton Corp. v. Bridgeton Health and Fitness, Inc., 884 S.W.2d 733, 740 (1994).  Under this standard, Transit's claims under the contracts were ascertainable at the date of the demand. Transit is entitled to prejudgment interest to be fixed by the district court in its judgment on remand.

The judgment of the district court is REVERSED, and the case REMANDED for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT