Jay ANGOFF, Director, Missouri Department of Insurance, acting as receiver for Commonwealth General Insurance Company, Respondent,

v.

MARION A. ALLEN, INC., Marion A. Allen, Inc. of Gainsville, Marion A. Allen, Inc. of Ft. Valley, Allen Insurance Associates, Inc., and Allen and Furr, Inc., Appellants.

No. SC 82910.

Supreme Court of Missouri,
En Banc.

Jan. 31, 2001.

As Modified on Denial of Rehearing
March 20, 2001.

R. Kent Sellers, Stacy M. Andreas, Amy B. Marcus, Kansas City, for Appellants.

Bruce E. Baty, Morrison & Hecker, L.L.P., Kansas City, Diane Garber, Missouri Department of Insurance, Jefferson City, for Respondent.

Thomas W. McCarthy, III, Katherine S. Walsh, Chesterfield, for Amicus Curiae.

## PER CURIAM.[1]

Marion A. Allen, Inc., Marion A. Allen, Inc. of Gainsville, Marion A. Allen, Inc. of Ft. Valley, Allen Insurance Associates, Inc. and Allen and Furr, Inc. (collectively Agent), appeal the decision of the trial court granting judgment to Jay Angoff, as receiver of Commonwealth General Insurance Company (Insurer), on Insurer's claims against Agent for payment of earned premiums due Insurer at the time Insurer was declared insolvent. Agent argues that the trial court erred in granting Insurer summary judgment because Agent is not subject to personal jurisdiction in Missouri. In the alternative, it argues that, under Missouri law, and under its contract and course of dealings with Insurer, it was entitled to set-off the amount of earned premiums Receiver alleges it owed Insurer by the amount of unearned premiums that Insurer owed it as shown on Insurer's records at the time of the insolvency. It claims that these records show that Insurer owes it more than it owes Insurer; thus, it has no balance owing Insurer at the time of the insolvency and, thus, no debt to go into the receivership estate.

Agent is subject to personal jurisdiction in Missouri. Agent, however, presented evidence that under the parties' course of dealings, Insurer's records at the time of insolvency showed or should have shown a set-off of the amounts claimed against the amounts owed Agent by Insurer, thus leaving no balance due to the Receiver. This is a material fact that is in dispute. Accordingly, the judgment is reversed, and the case is remanded.

## STATEMENT OF FACTS

Resolving all factual issues in favor of Agent, against whom summary judgment was granted, the record shows that, in April and July 1988, Insurer contracted with Agent, licensed insurance agents in the State of Georgia. The contract established an agency relationship between Insurer and Agent, enabling Agent to solicit contracts of insurance on behalf of Insurer.

During the course of their relationship, the parties accounted for monies due each other on a monthly basis. The accounting was, in part, based on a system of set-offs whereby, for example, if Insurer owed Agent money representing returned premiums, cancellations, or the like, Insurer would credit that amount against the amount of premiums Agent owed Insurer if the amount Agent owed Insurer exceeded the amount Insurer owed Agent. Agent paid Insurer the difference. When the amount Insurer owed Agent exceeded the amount Agent owed Insurer, the excess was carried over as a credit to the next month. Thus, in some months, as a result of the set-offs, Agent was not required to pay any additional money to Insurer.

Between September 1992 and August 30, 1993, Agent successfully solicited general liability and property policies and trucking policies on behalf of Insurer and had been paid premiums by the insureds. In order to bind coverage for these policies, Agent then paid over to Insurer $321,649.34 of these premium deposits and unearned premiums. In addition, in regard to this and other business that Agent did

---

1. This Court has jurisdiction pursuant to Mo. Const. art. V, sec. 10. This appeal was originally decided by the Court of Appeals, Western District, in an opinion by The Honorable Laura Denvir Stith. Portions of that opinion are incorporated without further attribution.

with Insurer, Insurer's records showed earned premiums due from Agent in the amount of $88,819.50.

In June 1993, Bill Raschke, former head of Insurer's commercial insurance division, called Tricia Adams, treasurer of Agent, to inform her that Insurer was losing its reinsurance for the general liability and property policies. He suggested to Ms. Adams that they move the business to another insurer instead of simply canceling all the policies. They agreed that Agent would pay premiums to a new insurance company to bind the new policies and Insurer would refund the unearned portion of the premiums for the transferred policies to Agent, mailing any difference by check to Agent. Agent, therefore, proceeded to transfer the affected policies to General Insurance Company and sought a refund of the unearned premiums. In recognition of this transfer, Agent states that Insurer's agency statements reflect that Agent was due $87,310.88 for these unearned premiums.

Also in 1993, before Insurer was placed in receivership, Mr. Baskin, Insurer's former president, informed Ms. Adams that he no longer wanted to underwrite the insurance of trucking companies and asked that this group of policies be moved to another insurer. Once again, the parties orally agreed that Agent would bind coverage with another insurer, and after the cancellation of these policies, Insurer would then return the premium deposits regarding these policies, totaling $234,338.46, to Agent. Agent paid First American Insurance Co. to bind coverage for the insureds. As a result of these transactions and set-offs, Agent says Insurer's records reflect refunds due Agent for unearned premiums paid on the transferred policies totaling $321,649.34.[2]

Then, on September 15, 1993, the Circuit Court of Jackson County ordered Insurer into receivership. At that time, Jay Angoff, Director of the Missouri Department of Insurance (Receiver), was appointed to serve as receiver for Insurer. Nearly two years later, on September 1, 1995, it was determined that efforts at rehabilitation had failed, and Insurer was placed into insolvency.[3]

Receiver brought suit against Agent to collect the $88,819.50 in earned premiums he said was due Insurer as of the date of the receivership pursuant to section 375.1204 [4] and Agent's agency contracts with Insurer. Agent denied that it was subject to the jurisdiction of the Missouri courts. Alternatively, it requested a set-off against the $88,819.50 in earned premiums of the $87,310.88 in unearned premiums due it related to the general liability and property policies and the $234,338.46 in unearned premiums due it related to the trucking company policies. The lower court granted Receiver's motion for summary judgment, rejecting Agent's claims that it was entitled to a defense of set-off and

2. Because this is an appeal of a grant of summary judgment, in reviewing the issues all facts shown by Agent in its affidavits and other documents are assumed to be true. It is for this reason that, in outlining these facts, the figures set out by the parties for the purpose of illustrating their legal theories have been used. This Court does not adopt any of these figures or treat them as established for accounting purposes, and they are subject to proof on remand. In particular, Agent presented evidence that the records showed that no balance was due at the time of insolvency as a result of the set-off of amounts Agent owed Insurer by the amounts Insurer owed Agent, and Agent presented records that purport to support this interpretation of Insurer's records. Given the complexity of the records

and the failure of the court below to review them on these issues, all factual issues as to what the records show are resolved in favor of Agent for purposes of this appeal.

3. Because Mr. Angoff left his position at the Missouri Department of Insurance, Mr. A.W. McPherson, the deputy director of the department, is presently acting as receiver. Throughout the remainder of this opinion the points of insolvency and receivership are used interchangeably since the issues presented in this case do not require a delineation between the two.

4. Except as otherwise indicated, all statutory references are to RSMo 1994.

that the lower court lacked personal jurisdiction over Agent.

## MISSOURI HAS PERSONAL JURISDICTION OVER AGENT

■ The determination whether the assertion of personal jurisdiction over a non-resident is proper requires a two-step inquiry. *Farris v. Boyke*, 936 S.W.2d 197, 200 (Mo.App.1996); *Shirkey v. McMaster*, 876 S.W.2d 648, 649 (Mo.App.1994). The first step is to determine whether the applicable long-arm statute, in this case section 375.1154, has been invoked by the actions of the out-of-state defendant. *Id.* If so, then the second step is to determine whether the assertion of personal jurisdiction comports with due process. *Id.*

Section 375.1154 states in relevant part: [A] court of this state having jurisdiction of the subject matter has jurisdiction over a person served pursuant to applicable laws or supreme court rule in an action brought by the receiver of a domestic insurer or an alien insurer domiciled in this state:

(a) If the person served is an agent, broker, or other person who has at any time written policies of insurance for or has acted in any manner whatsoever on behalf of an insurer against which a delinquency proceeding has been instituted, in any action resulting from or incident to such a relationship with the insurer.

Neither party contests that this section purports to grant jurisdiction over Agent and that Agent was properly served. Indeed, it is undisputed that Agent func-

tioned in an agency capacity with regard to Insurer, acting on its behalf in Georgia, selling policies underwritten by Insurer. The lower court did not err in finding that the requirements of section 375.1154 for asserting personal jurisdiction over Agent have been met.

■ As to the second step, the assertion of personal jurisdiction cannot violate traditional notions of fair play and substantial justice. The determination of whether assertion of jurisdiction would violate due process is made by considering a variety of factors, only one of which is at issue here.[5] Agent argues that insufficient evidence was presented for the trial court to determine that it had sufficient minimum contacts with Missouri to make it fair for the state to exercise jurisdiction over it. We disagree.

■ When the assertion of personal jurisdiction is contested, it is the plaintiff who must shoulder the burden of establishing that defendant's contacts with the forum state were sufficient. *State ex rel. William Ranni Associates, Inc. v. Hartenbach*, 742 S.W.2d 134, 137 (Mo. banc 1987). Agent argues the basis of Insurer's claim of personal jurisdiction is somehow insufficient because Insurer relied on unverified assertions in its pleadings and unauthenticated contracts attached to its pleadings. This argument is unpersuasive. Rule 55.12 states:

A statement in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion. An exhibit to a pleading is a part thereof for all purposes.

---

**5.** *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The factors that are considered, in addition to minimum contacts, include: " 'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering

fundamental substantive social policies.' " *Id.* Where a defendant whose activities in the forum State reach the level of minimum contacts contests the assertion of personal jurisdiction, he or she must make a compelling case that the existence of these other factors in its favor would render personal jurisdiction unreasonable. *Id.* at 477, 105 S.Ct. 2174. However, since neither party addressed these other factors on appeal or at trial, we will examine only the minimum contacts question.

*See also Federal Deposit Insurance Corp. v. Crismon,* 513 S.W.2d 305, 307 (Mo.1974); *Pillow v. General American Life Ins. Co.,* 564 S.W.2d 276, 279 (Mo.App.1978). Thus, in determining whether the motion to dismiss based on personal jurisdiction should have been granted, the court considers Insurer's allegations in its pleadings as well as the contracts attached to its pleadings to determine whether, if taken as true, they establish sufficient facts to support the finding that Agent had sufficient minimum contacts with Missouri to satisfy due process.[6]

The Supreme Court of the United States has held that, while jurisdiction over a non-resident defendant should not be based on the mere fact that defendant entered into a contract with a resident, jurisdiction may be proper if one considers, in addition, the business conducted by the parties, including prior negotiations and contemplated future consequences of the contract. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 479, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The Court recognized:

> the need for a "highly realistic" approach that recognizes that a "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum.

*Id.* (citations omitted).

In *Burger King,* in addition to the choice of law provision in the contract, as part of the franchise agreement franchisee was required to submit all fees and notices to Burger King's Miami headquarters, which set policy, assisted franchisees with major problems, and provided accounting, cost control, and inventory control guidance. In assessing the nature of these business transactions, *Burger King* found that:

> Eschewing the option of operating an independent local enterprise, [franchisee] deliberately "reach[ed] out beyond" Michigan and negotiated with a Florida corporation for the purpose of a long-term franchise and the manifold benefits that would derive from affiliation with a nationwide organization. Upon approval, he entered into a carefully structured 20 year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida. In light of Rudzewicz' voluntary acceptance of the long term and exacting regulation of his business from Burger King's Miami headquarters, the "quality and nature" of his relationship to the company in Florida can in no sense be viewed as "random," "fortuitous," or "attenuated." Rudzewicz' refusal to make the contractually required payments in Miami, and his continued use of Burger King's trademarks and confidential business information after his termination, caused foreseeable injuries to the corporation in Florida.

*Id.* at 479–80, 105 S.Ct. 2174 (citations omitted.)

The relationship that existed in *Burger King,* albeit in a different industry, is not substantially different in degree from the one in the case at bar. Here, the parties entered into agency contracts that provided that the actions and disputes between the parties would be governed by Missouri law, that Insurer would provide the accounting of premiums due, that Agent would remit earned premiums and other payments and notices to Insurer in Missouri, and that Insurer would set the poli-

---

**6.** While Agent requests that the contracts attached to the petition be ignored, Agent does not deny they exist or their accuracy; to the contrary, Agent argues that in assessing the validity of the defense of set-off the Court should consider the course of dealing they allege developed between the parties, which began and continued to exist in tandem with and according to their contractual relationship.

cy and procedures for Agent to follow. As in *Burger King*, Agent purposefully reached out of Georgia to contract with Insurer, a Missouri corporation, voluntarily accepting the benefits and burdens under the contract, which included, but were not limited to, the commissions earned on the policies sold and the adherence to the provisions set by Insurer, respectively.

In addition, Agent acknowledges and asserts that its course of dealing with Insurer consisted of a system of regular communications with Insurer for the purpose of determining the amount of premiums due, that it entered into many contracts on behalf of Insurer and remitted premiums to it and received commissions from it on numerous insurance policies. The subject matter of this suit relates specifically to those insurance contracts, premiums and commission payments. Such a relationship cannot be considered "random," "fortuitous," or "attenuated." Therefore, inasmuch as earned premiums are alleged to be due to Insurer, the failure to make those payments caused foreseeable injury to Insurer, and it is "at the very least, presumptively reasonable for [Agent] to be called to account [in Missouri] for such injuries." *Id.* at 480, 105 S.Ct. 2174.

This result is in accordance with the result reached by other jurisdictions on the issue of a state's right to assert jurisdiction over non-resident insurance agents under similar circumstances. *In re All-Star Ins. Corp.*, 110 Wis.2d 72, 327 N.W.2d 648 (1983), found that:

> The defendants [were] involved in the highly regulated insurance business. They both acted as agents soliciting insurance applications which were sent to All-Star in Wisconsin. All-Star performed its part of the contract entirely in Wisconsin. Scarborough and APS act-

ed as agents for All-Star for four and two years, respectively. During these years the defendants made numerous phone calls to Wisconsin. Further, the contract required that the defendants send, on a monthly basis, premium payments to Wisconsin on all applications solicited by the defendants and accepted by All-Star. Thus, the two agency contracts between the defendants and All-Star had a "substantial connection" with the state of Wisconsin.

*Id.* at 654. That court concluded that under such circumstances it was fair and reasonable to exercise jurisdiction over the defendants. Similarly, the Iowa Supreme Court held that:

> While the initial contact was made by [Insurer,] the initial contact developed into something significantly more: a contractual relationship which lasted several years and involved frequent contacts by telephone and mailed correspondence, together with substantial oversight by the home office in Iowa. We believe this relationship is capable of providing the "future consequences" and "actual course of dealing" which may form the basis of jurisdiction. *See Burger King*, 471 U.S. at 479, 105 S.Ct. at 2185, 85 L.Ed.2d at 545.

*Hager v. Doubletree*, 440 N.W.2d 603, 607 (Iowa 1989).

Here, as in the cases just discussed, Agent purposefully availed itself of the benefits of conducting business in Missouri, could foresee that its contracts would involve it in insurance business in Missouri, and was in fact so involved over the last years. Therefore, it was subject to the exercise of personal jurisdiction over it in this suit, arising out of its insurance business with a Missouri insurer.[7]

---

7. Agent argues that much of the evidence about its course of dealings should not be considered since it was revealed only after the trial court denied Agent's motion to dismiss on jurisdictional grounds. Agent argues that the issue of personal jurisdiction must be decided based solely on the pleadings and attachments to the pleadings, since that is all the trial court had before it when it initially denied the motion to dismiss based on lack of personal jurisdiction. The pleadings and attachments to them sufficiently show a basis for denial of the motion to dismiss. In addition, Agent cites no cases to support its argu-

## AGENT IS ENTITLED TO A SET–OFF OF PRE–RECEIVERSHIP UNEARNED PREMIUMS AND EARNED PREMIUMS

■ Sections 375.1150 to 375.1246 apply to all insurers doing business in this state. Section 375.1198.1 provides for the set-off of mutual debts or mutual credits arising out of a contract between an insurer and another, such as an agent, in a liquidation proceeding. It states:

1. Mutual debts or mutual credits, whether arising out of one or more contracts, between the insurer and another person in connection with any action or proceeding under sections 375.1150 to 375.1246, 374.216, 374.217 and 382.302, RSMo shall be set off and the balance only shall be allowed or paid, except as provided in subsections 2, 3, 4, 5 and 6 of this section and section 375.1204.

Sec. 375.1198.1.

Agent asserts that this section is directly applicable here. It notes that, prior to the receivership being established, it owed earned premiums to Insurer based on insurance policies it had with Insurer and that, conversely, Insurer held a large amount of unearned premiums owing to Agent due to policy cancellations. It says that these debts are therefore mutual in nature and arise out of contracts between Agent and Insurer; therefore, under section 375.1198, it was entitled to have these debts set-off and it was required to pay the Receiver only the balance, if any, due Insurer after the set-off. Since Agent asserts the books of Insurer showed it owed Insurer earned premiums of only $88,819.50 of pre-insolvency sales, and that this amount, prior to insolvency, should have been entirely set-off by the unearned premiums of $321,649.34 which Insurer, under their course of dealings, owed Agent prior to insolvency, then at the time of insolvency it owed no balance to Insurer and no balance was due Receiver. It alleges the trial court erred in rejecting this argument and holding that the set-off of these pre-insolvency debts would not be recognized, so that, as a result, it owed earned premiums of $88,819.50 to the Receiver.

The Receiver counters that subdivisions 375.1198.2(2) and .2(4) contain exceptions to set-off that are applicable here. The Receiver also argues that section 375.1204 precludes the set-off here, in that it precludes set-off of amounts that were advanced by an agent in the absence of payment by the insured to the agent of those amounts. Finally, Receiver argues the debts are not mutual, in that an agent holds the earned premiums in a fiduciary, trust capacity, while an insurer holds unearned premiums owed to an agent as a debt, and not in a fiduciary capacity. These contentions are addressed in turn.

Subdivision 375.1198.2(4) states that set-off will not be allowed if "[t]he obligation of the insurer is owed to an affiliate of such person or to any entity or association, rather than the person." Sec. 375.1198.2(4). Receiver argues that the insureds are entities or associations separate from Agent. The Receiver also relies on the exception set out in section 375.1198.2(2), which states that a set-off will not be permitted if "[t]he obligation of the insurer to the person was purchased by or transferred to the

---

ment that this Court must ignore record evidence, which in fact supports the exercise of personal jurisdiction over it and which shows that the exercise of such jurisdiction would not violate due process. The cases it cites stand only for the proposition that a defendant does not waive its personal jurisdiction arguments by defending on the merits. *See, e.g., Kennon v. Citizens Mut. Ins. Co.,* 666 S.W.2d 782, 786 n. 1 (Mo.App.1983). We agree. But, that does not mean that the Court is required to ignore relevant evidence on the record in deciding whether the exercise of jurisdiction violates due process, and no case is cited so holding. Missouri cases recognize that it is proper for a court to permit discovery on the issue of personal jurisdiction and to rely on that discovery in deciding a challenge to personal jurisdiction. *Farris,* 936 S.W.2d at 203. Similarly, the Court is free to consider this evidence on this appeal.

person with a view of its being used as a setoff."

Neither of these exceptions applies. First, the insureds cannot fairly be characterized as "any entity or association, rather than the [agent]." Second, there is no evidence that Agent purchased or was transferred the obligation from its insureds. It simply transferred their policies, at the request and with the approval of Insurer, to a new insurer, canceled their policies with Insurer, and now, pursuant to the normal business practice of the parties, seeks to have the Receiver acknowledge that the amounts owed it in unearned premiums on those policies have been or will be set-off against the earned premiums that it owed Insurer at the time of insolvency.

As noted, the Receiver also argues that section 375.1204 prohibits setting off the debts. That section states in relevant part:

An agent, broker, premium finance company, or any other person, other than the insured, responsible for the payment of a premium, *shall be obligated to pay any unpaid earned premium due the insurer at the time of the declaration of insolvency as shown on the records of the insurer.* The liquidator shall also have the right to recover from such person any part of an unearned premium that represents commission of such person. *Credits or setoffs or both shall not be allowed to an agent,* broker, or premium finance company for any amounts *advanced to the insurer by the agent, broker, or premium finance company on behalf of, but in the absence of a payment by the insured.*

Sec. 375.1204 (emphasis added).

The first two sentences of this section provide that the Insurer would be entitled to payment of any earned but unpaid premiums that the records of Insurer show were owed to it at the time of the declaration of insolvency. This section, however, does not support the claim that Agent did not have a right of set-off as to the $88,819.50 in earned premiums Receiver claims here.

More specifically, the first sentence of section 375.1204 provides that the Receiver shall look to an insurer's books and records to see whether they reflect any unpaid earned premiums due at the time of the declaration of insolvency. The third sentence then provides that an agent shall not be allowed credits or set-offs for amounts it has advanced to the insurer but for which it has not been paid by the insured.

The clear intendment of these provisions, read together, is that in determining whether any earned premiums are due the insurer at the time of insolvency, and their amount, the agent is entitled to receive a credit or set-off for amounts of unearned premiums or other monies held by the insurer but to which the agent is entitled as of the date of the insolvency, except if they constitute advances without payment by the insured.[8] The liabilities of the insured, the agent and the insurer become fixed at the time of insolvency, and the amount of premiums then shown to be due on the books of the company reflect the amount that the receiver has a right to collect. *See, e.g., Clay v. Independence Mutual Ins. Co.,* 359 S.W.2d 679, 684 (Mo. banc 1962). Any balance due after allowing any offset of pre-insolvency debts and credits is considered a debt owing to the receiver.

Here, Agent presented evidence that its contract with Insurer provided for an accounting of monies due between Agent and Insurer on a monthly basis, and that accounting was based on a system of set-offs under which monies Agent owed Insurer for earned premiums were set-off against monies Insurer owed Agent at the end of the month. In fact, as required by contract,

---

**8.** *See generally Schudy v. Cooper,* 824 S.W.2d 899, 901 (Mo. banc 1992) (employing the maxim *"expressio unius est exclusio alterius,"* the Court found that including residential leasing as a revenue producing activity necessarily excluded commercial leasing).

"[e]ndorsement and cancellation returns are to be recorded on Agent's account *in the month endorsement or cancellation is effective.*" (Emphasis added). Thus, for example, if at the end of the month the accounting records showed that Agent still owed Insurer a balance after the set-offs, Agent paid that amount. If the accounting records then showed that Insurer owed Agent more than Agent owed Insurer after the set-offs (separate from any commissions Agent received), then this was reflected on the Insurer's records as a credit toward amounts Agent might owe the following month on premiums collected.

Again according to Agent's evidence, at the time the Insurer was ordered into receivership on September 15, 1993, under this system of accounting established by the parties' course of dealing and their contract, Agent had already cancelled the policies at issue previously held by Insurer and had bound over coverage with another insurer, for which it was entitled to a refund of payments of unearned premiums from Insurer of some $321,649.34. It also, apparently, had solicited other business and obtained earned premiums therefor in the amount of $88,819.50. Applying section 375.1204, since Agent had *not* advanced the unearned premiums without payment by the insured, it was entitled to a credit against the earned premiums by the unearned premiums then due. These amounts would be required to be set-off on the books of Insurer as of the date of the establishment of the receivership on September 15, 1993. This was also the result that would be reached under the parties' system of accounting pursuant to their course of dealing.

Applying this rule to the facts as shown by Agent's evidence, this would mean that the $88,819.50 in earned premiums would be set-off by $321,649.34 in unearned premiums otherwise due, reducing the debt owed by Insurer to Agent to approximately $232,829.84. Agent owed Insurer nothing at the time of insolvency, and Insurer owed Agent approximately $232,829.84, as to which debt Agent is a creditor of the insolvent insurer, subject to the usual rules of priority under the Insurers Supervision, Rehabilitation and Liquidation Act.

Receiver in the instant case argues that this type of set-off cannot be allowed because the debts are not mutual, and section 375.1198 authorizes only the set-off of mutual credits and debts. In support, it notes that under section 375.051:

Any person who shall be appointed or who shall act as agent for any insurance company within this state, or who shall, as agent, ... collect premiums thereon, or who shall receive or collect moneys from any source or on any account whatsoever, as agent, for any insurance company doing business in this state, *shall be held responsible in a trust or fiduciary capacity* to the company for any money so collected or received by him for such company.

(Emphasis added). *See also* Appleman on Insurance Ch. 308 Sec. 8786 at 516–17 (1981). This provision makes an agent a fiduciary as to monies it has collected for an insurer. This would apply to any earned premiums it had collected from insureds but not paid over to an insurer at the time of the insolvency. This statutory requirement is mirrored in Agent's contract with Insurer, which stated that:

All Premiums are the exclusive property of the [Insurer] and shall be held by the Agent *in a strict fiduciary capacity as trustee for the [Insurer]* until delivered to the [Insurer.] ... keeping of an account with the Agent on the [Insurer's] books, as a creditor and debtor account, is declared a record memorandum of business transaction, and neither such keeping of account nor alteration in Commission amount, nor failure to enforce prompt remittance, compromise, settlement, declaration of balance of account nor suspension or termination of this Agreement shall be held to waive assertion of the trust rela-

tionship as to the Premiums collected by the Agent.

(Emphasis added). Under the statute and the contract, Agent holds any unpaid earned premiums that are in its possession at the time of insolvency in a fiduciary capacity. As the Receiver notes, since it holds earned premiums as a fiduciary, but the Insurer holds any monies owed Agent as a debtor rather than as a fiduciary, the debts are not held in the same capacity. Therefore, they cannot be considered mutual debts subject to set-off under section 375.1198.

Receiver's argument is correct insofar as Agent collected any earned premiums after the date of insolvency, should it try to set-off those earned premiums with the amounts Insurer owed it in unearned premiums prior to or after the insolvency. The argument is not applicable here, however, for Agent is seeking a set-off only of *pre-insolvency* earned premiums with *pre-insolvency* unearned premiums, as reflected on the Insurer's books and records pursuant to their course of dealing. At the time of insolvency, Agent was already entitled to a set-off of these amounts. There was no debt owing at the time of the insolvency as to these funds. The lack of mutuality is irrelevant, for there was no debt at the time of insolvency to which it could apply, although of course it would apply to any attempt by the Agent to set-off post-insolvency debts.[9]

This result is consistent with the approach taken by the Eighth Circuit Court of Appeals in *Transit Casualty Co. v. Selective Ins. Co. of the Southeast*, 137 F.3d 540 (8th Cir.1998). In that case, a reinsurer went into insolvency. Its receiver brought an action against the insurer for the amounts owed it by the insurer under retrocession contracts. The insurer pleaded as an affirmative defense the right to set-off amounts it owed the reinsurer against amounts the reinsurer owed it under the reinsurance contract. Although decided

prior to the effective date of section 375.1198 and section 375.1204, *Selective* nonetheless found that set-off of these debts was permissible under Missouri law and was not inconsistent with Missouri insurance law or the laws governing insolvency. In so doing, it first addressed and rejected the argument raised by the receiver for the reinsurer that, if the court permitted a set-off of the debts owed between insurer and reinsurer, it would, in effect, be giving a preference to the insurer, stating:

> We agree with Selective that nothing in the Insurance Code nor in Missouri common law indicates that Missouri rejects the right of parties to contract for a right to offset debts.
>
> In 1892 the Supreme Court [of the United States] held that the right to assert set-off in insolvency was customary both statutorily and as a matter of equity.... The Court went on to hold that "[w]here set-off is otherwise valid, it is not perceived how its allowance can be considered a preference, and it is clear that it is only the balance, if any, after the set-off is deducted, which can justly be held to form part of the assets of the insolvent."
>
> ... Thus, the broad principle of offset in insurance insolvencies has been accepted by Missouri courts ...
>
> ... we believe that the Missouri Supreme Court would hold that a mutual set-off may constitute a pre-receivership asset that does not subvert the priority of creditors listed in the Insurance Code.

*Selective*, 137 F.3d at 543–44. The Eighth Circuit went on to permit the set-off, holding:

> The allowance of set-off in Missouri insurance insolvencies does not contradict the Missouri Insurance Code and it does not otherwise violate Missouri public policy. There is no indication in Missouri case law that the right to set-off

9. Mutuality would also apply to pre-insolvency debts where, unlike here, there was no course of dealing or contractual requirement by which such debts would have been set-off

and the debts were carried over past the time of insolvency. Such set-offs would be permitted in these cases under section 375.1198 only if the debts or credits are mutual.

has been rejected. Moreover, to allow set-off aligns Missouri with almost all other states.... Indeed, since Transit's insolvency, Missouri has enacted a set-off provision, an indication that set-offs likely did not violate public policy prior to the enactment. Mo.Rev.Stat. Sec. 375.1198 (1997).

*Id.* at 544–45. The Eighth Circuit recognized that section 375.1198 allows the set-off of mutual debts in insolvencies. It then held that the parties' contract in that case provided for inter-contract set-off of debts and did not disallow such set-off in insolvency. The insurer was permitted to obtain a set-off of the debts and obligations of it and the reinsurer. *Id.*

In *Clay v. Independence Mut. Ins. Co.,* 359 S.W.2d 679 (Mo. banc 1962), Time Insurance Agency was sued by the superintendent of insurance, as receiver of Independence Mutual Insurance Company, to recover premiums and unearned commissions owed on policies Time wrote for Independence prior to the receivership. The court found that the receiver was entitled to such funds, although not to attorney's fees. *Clay* also recognized that Time held the premiums it collected in trust for Independence.

In determining the amount owed Time by Independence, *Clay* did not say that Time owed Independence all earned premiums it collected. It said that Time "was obligated to pay Independence the balance shown on monthly reports." *Id.* at 683. It further held that "[w]hen a Receiver was appointed and the policies were canceled, the liability of the parties was then and there fixed." *Id.* at 684.

A similar approach was taken in *Clay v. Eagle Reciprocal Exchange,* 368 S.W.2d 344 (Mo. banc 1963). In that case, as in the other *Clay* case just cited, while the focus of the Court was on the amount due, there was apparently no dispute that, in determining that amount, the Court and the parties would look to the balance shown due on the books and records as of the day of insolvency. *See also Gambrell v. Cox,* 250 S.C. 228, 157 S.E.2d 233, 236 (1967) (an agent's right to set-off depended on its ability to prove such right existed "at the time of the insolvency"); *Langdeau v. Bouknight,* 162 Tex. 42, 344 S.W.2d 435, 438 (1961) (the agent was not entitled to set-off against net premiums he owed on policies sold *before* the insurer was placed in receivership, the amounts insurer owed agent for unearned premiums resulting from cancellations of agents customer's policies, *where assignments of such amounts to agent were dated after the institution of receivership proceedings*); Appleman on Insurance, Ch. 362B, Section 10692 at 137.[10]

As in the above cases, so here, the liabilities of the parties were fixed at insolvency. A fact issue exists, therefore, as to whether, as claimed by Agent, by that point, under the parties' course of dealing, the policies had been canceled and Agent was entitled to a set-off of these pre-insolvency debts as reflected on the books of Insurer at the time of the declaration of a receivership. Thus, summary judgment was improper.

For the reasons set out above, the judgment is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

LIMBAUGH, WHITE, WOLFF and BENTON, JJ., and LAWRENCE G. CRAHAN, JAMES R. DOWD, and SHERRI B. SULLIVAN, Sp.JJ., concur.

PRICE, C.J., HOLSTEIN and LAURA DENVIR STITH, JJ., not participating.

---

**10.** Even the contract between the parties provided that earned premiums are held in a fiduciary capacity only until delivered to the Insurer. Assuming the credits had been made by the parties with reference to the amounts in dispute, as they had done all along with other amounts, "delivery" under the custom of the parties would have been executed, and there would have been no corpus upon which to impose a trust.