Donald L. BRYANT, Jr., Appellant,

v.

SMITH INTERIOR DESIGN
GROUP, INC.,

and

William Kopp, Respondents.

No. SC 90205.

Supreme Court of Missouri,
En Banc.

March 9, 2010.

A. Elizabeth Blackwell, John R. Musgrave, Ryan K. Manger, Thompson Coburn LLP, St. Louis, for appellant.

Paul Gerard Lane, Douglas P. Dowd, James M. Dowd, Alex R. Lumaghi, Dowd & Dowd, P.C., St. Louis, for respondents.

LAURA DENVIR STITH, Judge.

Missouri resident Donald L. Bryant, Jr. filed suit in St. Louis County against two out-of-state defendants, Smith Interior Design Group, Inc. and William Kopp. His amended petition includes counts of fraudulent misrepresentation and fraudulent concealment in Missouri. The trial court found Missouri did not have personal jurisdiction over the defendants and dismissed the suit. Mr. Bryant appeals.

Missouri's long-arm statute extends to all those who commit tortious acts in Missouri. The petition alleges that Mr. Kopp, acting for Smith Interior, visited Missouri to negotiate interior design services for Mr. Bryant's New York apartment. Smith Interior thereafter made telephone calls and sent e-mails and fraudulent or misleading documents into Missouri with the intent to defraud Mr. Bryant and to conceal the true nature of Smith Interior's commission charges, resulting in harm to Mr. Bryant in Missouri. This tortious conduct is sufficient to satisfy Missouri's long-arm statute. The petition also demon-

strates sufficient minimum contacts between defendants and Missouri to satisfy due process and support specific jurisdiction over them in this state. One who attempts to defraud a Missouri resident through mailing fraudulent and misleading documents to him or her in Missouri thereby becomes subject to personal jurisdiction in Missouri for claims arising out of that conduct. For these reasons, the judgment is reversed, and the case is remanded.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This appeal arises out of the dismissal of a suit raising claims of fraud and misrepresentation in connection with a business deal between Mr. Bryant, a Missouri resident, and Smith Interior, a Florida corporation, and its president, William Kopp, a resident of Florida.[1]

Mr. Bryant's first amended petition alleges that at the invitation of Mr. Bryant's former wife, Mr. Kopp traveled to St. Louis in 2006 to meet with Mr. Bryant to discuss Smith Interior providing interior design services for a New York City co-op apartment Mr. Bryant was considering buying. Acquaintances of Mr. Bryant, for whom Smith Interior previously had provided design services in Missouri, recommended Smith Interior to the Bryants for the design project.

In June 2006, Mr. Bryant purchased the apartment. A year later, in July 2007, Mr. Bryant and Mr. Kopp met—Mr. Bryant does not allege where—and agreed that Smith Interior would provide design services for the apartment. Based on negotiations with Mr. Kopp, Mr. Bryant believed Smith Interior would charge a commission fee for its design services in the range of the industry standard of 20 to 30%.

Smith Interior began providing design services for the New York apartment, buying furniture and contacting Mr. Bryant by mail at his home in Missouri on at least seven occasions between August and December 2007. These mailings included documents that listed furniture items that Smith Interior had purchased and reflected a price for each item. Mr. Bryant alleges that these charges, although purporting to represent the cost of items purchased, in fact included substantial commissions and miscellaneous fees that purposely were hidden from Mr. Bryant and to which Mr. Bryant had not agreed. When Mr. Bryant expressed his concern, Mr. Kopp's representative at first refused to provide additional information about the costs. Eventually, Mr. Kopp sent invoices and backup documentation by fax and overnight delivery to Mr. Bryant's Missouri address. These invoices, Mr. Bryant asserts, revealed that Smith Interior had charged commissions that varied between 3 and 172%, far in excess of the 20 to 30% commissions that Mr. Bryant alleges are normal in the industry and that he had been led to expect.

Unhappy with both the hidden commission rates and the quality of Smith Interior's design services, Mr. Bryant delayed final payment, and the parties exchanged e-mails into early 2008 over the balance due Smith Interior. In February 2008, Smith Interior sent a letter to Mr. Bryant at his Missouri address demanding final payment of the amounts set out in its earlier mailings to Mr. Bryant in Missouri.

The parties were unable to resolve their differences, and in March 2008, Mr. Bryant sued Smith Interior and Mr. Kopp in St. Louis County in a five-count petition

---

1. As Smith Interior and Mr. Kopp make a joint due process argument, this opinion, for simplicity, shall refer to them jointly either as "defendants" or as "Smith Interior" unless clarity requires otherwise.

asserting: 1) fraudulent misrepresentation; 2) fraudulent concealment; 3) negligent misrepresentation; 4) unjust enrichment; and 5) violation of section 407.025, RSMo 2000 [2] of the Missouri Merchandising Practices Act. Following the filing of a first amended petition, defendants filed a motion to dismiss for lack of personal jurisdiction. They alleged that Mr. Bryant had initiated the contact with Smith Interior and that the latter did not purposely avail itself of the privilege of conducting business in Missouri. The trial court dismissed the petition. Mr. Bryant appealed. After decision by the court of appeals, this Court granted transfer. Mo. Const. art. V, § 10.

## II. STANDARD OF REVIEW AND PRINCIPLES GOVERNING DISMISSAL FOR LACK OF PERSONAL JURISDICTION

█ The "sufficiency of the evidence to make a prima facie showing that the trial court may exercise personal jurisdiction is a question of law," which, on appeal, this Court reviews *de novo*. *Wilson Tool & Die, Inc. v. TBDN–Tennessee Co.*, 237 S.W.3d 611, 615 (Mo.App.2007), *quoting*, *Stavrides v. Zerjav*, 848 S.W.2d 523, 527 (Mo.App.1993); *see also State ex rel. Deere & Co. v. Pinnell*, 454 S.W.2d 889, 893 (Mo. banc 1970). When personal jurisdiction is contested, "it is the plaintiff who must shoulder the burden of establishing that defendant's contacts with the forum state were sufficient." *Angoff v. Marion A. Allen, Inc.*, 39 S.W.3d 483, 486 (Mo. banc 2001). A reviewing court evaluates personal jurisdiction by considering the allegations contained in the pleadings to determine whether, if taken as true, they establish facts adequate to invoke Missouri's long-arm statute and support a finding of minimum contacts with Missouri

sufficient to satisfy due process. *Id.* at 487; *see also Moore v. Christian Fidelity Life Ins. Co.*, 687 S.W.2d 210, 211 (Mo. App.1984) ("[T]he allegations of the petition are given an intendment most favorable to the existence of the jurisdictional fact"). While a court will consider affidavits if proper ones are filed in connection with the motion to dismiss, *Chromalloy Am. Corp. v. Elyria Foundry Co.*, 955 S.W.2d 1, 3 n. 3 (Mo. banc 1997), no affidavits were filed here.

## III. MR. BRYANT'S PETITION ASSERTS SUFFICIENT CONTACTS TO SUPPORT PERSONAL JURISDICTION

█ Mr. Bryant argues that the circuit court erred in determining that it lacked personal jurisdiction over defendants. Missouri courts employ a two-step analysis to evaluate personal jurisdiction. *Conway v. Royalite Plastics, Ltd.*, 12 S.W.3d 314, 318 (Mo. banc 2000). First, the court inquires whether the defendant's conduct satisfies Missouri's long-arm statute, section 506.500. *Id.* If so, the court next evaluates whether the defendant has sufficient minimum contacts with Missouri such that asserting personal jurisdiction over the defendant comports with due process. *Id.*

### A. Missouri Long–Arm Statute

█ Missouri's long-arm statute provides in relevant part:

1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this

**2.** All statutory references are to RSMo 2000 unless otherwise indicated.

state as to any cause of action arising from the doing of any of such acts:

. . . .

(3) The commission of a tortious act within this state

§ 506.500.1(3). Section 506.500 is construed "to extend the jurisdiction of the courts of this state over nonresident defendants to that extent permissible under the Due Process clause." *State ex rel. Deere,* 454 S.W.2d at 892. "[E]xtraterritorial acts that produce consequences in the state," such as fraud, are subsumed under the tortious act section of the long-arm statute. *Longshore v. Norville,* 93 S.W.3d 746, 752 (Mo.App.2002); *Schwartz & Assocs. v. Elite Line, Inc.,* 751 F.Supp. 1366, 1369 (E.D.Mo.1990) (allegation of extraterritorial tortious act that yields consequences in state is "sufficient to support the exercise of personal jurisdiction under the Missouri long-arm statute").

■ Here, Mr. Bryant alleges that, by sending false and misleading documents to him in Missouri and by misrepresenting or concealing in subsequent contacts by telephone, e-mail and letter that its commission rates were far in excess of those generally charged in the industry, defendants committed fraudulent and misleading acts in Missouri that subject them to jurisdiction here for claims arising out of those acts. Mr. Bryant's allegations are sufficient to demonstrate the commission of a tortious act within this state and to place Smith Interior within the reach of Missouri's long-arm statute.

*B. Due Process Minimum Contacts with Missouri*

■ The Fourteenth Amendment's Due Process Clause bars Missouri courts from exercising personal jurisdiction over a defendant where to do so offends "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal quotations and citations omitted). Accordingly, absent one of the traditional territorial bases of personal jurisdiction—presence, domicile or consent [3] —a court may assert personal jurisdiction over a defendant only if certain minimum contacts between Missouri and the defendant are established. *Id.*

■ When evaluating minimum contacts, the focus is on whether "there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). This inquiry "cannot be simply mechanical or quantitative." *Int'l Shoe,* 326 U.S. at 319, 66 S.Ct. 154.

■ A court has "general jurisdiction" over an out-of-state defendant if the defendant's connections with the state are systematic, continuous and substantial enough to furnish personal jurisdiction over the defendant based on any cause of action— even one that is unrelated to the defendant's contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)

■ By contrast, a court acquires "specific jurisdiction" over an out-of-state defendant when the court "exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales,* 466 U.S. at 414 n. 8, 104 S.Ct.

---

**3.** *See State ex rel. K–Mart Corp. v. Holliger,* 986 S.W.2d 165, 167 (Mo. banc 1999) (explaining that at one time most "assertions of personal jurisdiction were premised on a defendant's presence . . ., the defendant's domicile . . ., or consent . . .").

1868. In some cases, single or isolated acts by a defendant in a state, because of their nature and quality and the circumstances of their commission, provide sufficient minimum contacts to support jurisdiction for liability arising from those acts.[4] *See Int'l Shoe*, 326 U.S. at 318, 66 S.Ct. 154.

■ Here, Mr. Bryant asserts that Missouri has specific jurisdiction over the defendants on fraud and misrepresentation claims that arise out of their conduct in Missouri and their contacts with Missouri that have caused effects in this state. In support, Mr. Bryant points to the allegations in his amended petition that Mr. Kopp visited him in Missouri in 2006 to gather ideas for designing the New York apartment. Following up on that meeting, in the fall and early winter of 2007, Smith Interior mailed some seven documents to Mr. Bryant in Missouri, all of which are alleged to contain misrepresentations or fraudulent omissions about fees, commissions and costs that form the basis of Mr. Bryant's misrepresentation claims. Once Mr. Bryant raised questions about the work and commissions of Smith Interior, the latter allegedly engaged in e-mail and telephone exchanges with Mr. Bryant into Missouri, and sent invoices to Mr. Bryant by fax and overnight delivery into Missouri, in an effort to further the fraud and obtain payment. Mr. Bryant alleges that these allegations support a claim for fraudulent misrepresentation,[5] stating:

> Defendants made material misrepresentations to Mr. Bryant in the August, September, November and December Documents sent to Mr. Bryant in St. Louis in connection with their fees and commissions in the decorating of the New York co-op and the costs for the furniture and other household items listed in the August, September, November, and December Documents.

4. The parties cite to a number of Missouri court of appeals cases that utilize a five-factor test in determining whether sufficient minimum contacts exist to satisfy due process: 1) the nature and quality of defendant's contacts with Missouri; 2) the quantity of those contacts; 3) the relationship of the cause of action to those contacts; 4) the interest of Missouri in providing a forum for its residents; and 5) the convenience or inconvenience of the forum to the parties. By contrast, personal jurisdiction cases decided by this Court neither have required nor, other than a single per curiam decision (in *Conway* ), utilized this approach. *Compare Angoff*, 39 S.W.3d at 486–88 (no five-factor test); *Chromalloy*, 955 S.W.2d at 5 (same); *State ex rel. William Ranni Assocs., Inc. v. Hartenbach*, 742 S.W.2d 134, 137–39 (Mo. banc 1987) (same), *with Conway*, 12 S.W.3d at 318 (applies five-factor test); *Childers v. Schwartz*, 262 S.W.3d 698, 702 (Mo.App.2008) (same); *Auld v. Adler*, 96 S.W.3d 920, 924 (Mo.App.2003) (same).

   While courts can use the five-factor test if it seems useful in a particular case, it is simply a tool to assist them in resolving the ultimate issue whether the defendant has purposely availed itself of the privilege of doing business in this state such that it reasonably could anticipate being haled into court here. To the extent that court of appeals cases suggest that this five-factor approach is required in Missouri, or that it is used commonly in other state and federal courts (other than the Eighth Circuit), they are in error.

5. The elements of fraudulent misrepresentation are: (1) the speaker makes a false, material representation; (2) the speaker knows the representation is false or is ignorant of its truth; (3) the speaker intends that the representation should be acted on by the hearer in the manner reasonably contemplated; (4) the hearer is ignorant of the falsity of the representation; (5) the hearer relies on the representation's truth; (6) the reliance is reasonable; and (7) the hearer's reliance on the representation causes injury. *Crossland Constr., Co. v. Alpine Elec. Constr., Inc.*, 232 S.W.3d 590, 592–93 (Mo.App.2007). The facts supporting the fraudulent misrepresentation claim also form the basis of Mr. Bryant's other counts claiming fraudulent concealment, negligent misrepresentation, unjust enrichment and violation of section 407.025.

Numerous cases from other jurisdictions have held that the sending of fraudulent documents into a state constitutes a purposeful availment of the privilege of conducting activities within the forum state and provides the minimum contacts necessary to support personal jurisdiction in that state when the claim arises out of those contacts, as it does here. Strikingly similar in relevant respects is *Murphy v. Erwin–Wasey, Inc.,* 460 F.2d 661 (1st Cir. 1972), in which the complaint alleged that the New York defendant intentionally misrepresented commission amounts by mailing false statements to the Massachusetts plaintiff. The First Circuit noted:

> We would be closing our eyes to the realities of modern business practices were we to hold that a corporation subjects itself to the jurisdiction of another state by sending a personal messenger into that state bearing a fraudulent misrepresentation but not when it follows the more ordinary course of employing the United States Postal Service as its messenger. . . . *Where a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that state.* The element of intent also persuades us that there can be no constitutional objection to Massachusetts asserting jurisdiction over the out-of-state sender of a fraudulent misrepresentation, for such a sender has thereby "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

460 F.2d at 664 (emphasis added). Similarly, in *FMC Corp. v. Varonos,* 892 F.2d 1308, 1309 (7th Cir.1990), the defendant worked for the plaintiff as an office manager in Greece. She defrauded the plaintiff company of thousands of dollars by sending it fraudulent invoices for payment for services that were never performed. *Id.* at 1310. The Seventh Circuit held that by reaching out to the plaintiff in Illinois, the defendant "should have foreseen that she could be required to answer for her actions in Illinois." *Id.* at 1313. The court rejected the defendant's argument that there was no purposeful availment because her job required her to communicate with the plaintiff in Illinois, stating, "sending communications containing misrepresentations, the basis for jurisdiction in this case, was not part of her job description." *Id.* at 1314.

In *Oriental Trading Co. v. Firetti,* 236 F.3d 938, 941–42 (8th Cir.2001), defendant corporate officers made telephone calls and sent faxes into Nebraska to convince the plaintiff to provide funds to pay estimated duties, but then refused to refund these sums after United States Customs declared there would be no duties. The Eighth Circuit held that by "purposely directing their fraudulent communications at residents of Nebraska, the defendants should have realized that the brunt of the harm would be felt there . . . and they should have reasonably anticipated being haled into court there." *Id.* at 943; *accord, Lewis v. Fresne,* 252 F.3d 352, 359 (5th Cir.2001) ("The 'actual content' of [the defendants'] communications to [the plaintiff] shows purposeful availment of the benefits and protections of Texas law"); *Lebel v. Everglades Marina, Inc.,* 115 N.J. 317, 558 A.2d 1252, 1257 (1989) ("In this case, defendant's alleged phone calls to New Jersey and use of the mails to solicit the contract would satisfy the minimum-contacts requirement"); *Shrout v. Thorsen,* 470 So.2d 1222, 1226 (Ala.1985) ("To disallow service of process in cases like this would give persons so inclined a license to put these shams together").

The principles set out in these cases are directly applicable here. Simply

put, the counts in Mr. Bryant's petition are rooted in allegations that the documents Smith Interior sent to Mr. Bryant in August to December 2007 materially misrepresented and concealed the true costs of Smith Interior's commissions and fees. The petition alleges that Smith Interior intentionally sent these misleading communications into Missouri in an effort to defraud Mr. Bryant, a Missouri citizen, and that this fraud was furthered by Mr. Kopp's actual presence in Missouri for initial negotiations and by Smith Interior's later letters, e-mails and telephone calls. Taking Mr. Bryant's allegations as true, as this Court must, this case presents a ready example of facts supporting specific jurisdiction. Where "the actual content of communications with a forum gives rise to intentional tort causes of action," as Mr. Bryant's petition alleges here, "this alone constitutes purposeful availment." *Lewis,* 252 F.3d at 359 (internal quotations and citations omitted).

■ Nevertheless, Smith Interior says this Court should disregard all of its contacts with Missouri because Mr. Bryant was the one who initiated the business relationship between the parties by asking Mr. Kopp to discuss interior design of the New York apartment. As the Tenth Circuit has noted, however, whether "a 'party solicited the business interface is irrelevant, so long as defendant then directed activities to the forum residents.' " *Kennedy v. Freeman,* 919 F.2d 126, 129 (10th Cir.1990), *quoting, Lanier v. Am. Bd. of Endodontics,* 843 F.2d 901, 910 (6th Cir. 1988). Were the law otherwise, it effectively would immunize an out-of-state defendant from being haled into court in a state to which it had sent fraudulent communications regardless of the degree of its misconduct and whatever the effects of its fraud in that state. This is not the law.

■ While "unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State," *Hanson,* 357 U.S. at 253, 78 S.Ct. 1228, the fact that someone else initiated the first contact does not mean that the entire course of conduct is considered unilateral. Regardless of who initially called whom, for purposes of personal jurisdiction the dispositive facts are that Smith Interior is alleged to have committed a tortious act in Missouri by intentionally and voluntarily sending fraudulent documents into Missouri in an attempt to defraud a Missouri citizen.[6] Added to this are the defendants' calls, letters and e-mails to Missouri, as well as Mr. Kopp's earlier presence in Missouri in negotiations that ultimately resulted in the agreement that led to this fraud. *See Oorah, Inc. v. Schick,* Civil Action No. 08–2202(FLW), 2009 WL 198192, at *5 (D.N.J., January 27, 2009) (unpublished opinion) ("Actual presence during pre-contractual negotiations ... is generally factored into the jurisdictional determination").

■ In light of these contacts, this Court is not left to ponder whether assert-

---

**6.** Even when fraud is not alleged, while mailings alone often may not provide a sufficient basis for personal jurisdiction, the minimum contacts analysis "is not susceptible of mechanical application." *State ex rel. Nixon v. Beer Nuts, Ltd.,* 29 S.W.3d 828, 834 (Mo.App. 2000). It is an ad hoc process; rather than arriving at per se conclusions, the facts of each case must be examined carefully. Where sufficiently significant to a particular cause of action, the mailing of documents into a state has been held adequate to provide the minimum contacts necessary for a court to exercise personal jurisdiction. *See, e.g., McGee v. Int'l Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) (upholding jurisdiction over a defendant whose only contacts with the state were mailing an insurance contract and accepting payments from a state resident).

ing personal jurisdiction over the defendant would be fair. Under the minimum contacts analysis it is essential that "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The defendants in this case reasonably should have anticipated that, by sending fraudulent documents into this state, they would be made to answer in a Missouri court.

## IV. CONCLUSION

Because defendants' commission of a tortious act in Missouri brings them within Missouri's long-arm statute and because defendants have sufficient minimum contacts with Missouri to satisfy due process, their motion to dismiss for lack of personal jurisdiction should have been overruled. Accordingly, the judgment of the trial court is reversed, and the cause is remanded.

All concur.