**Mark BALDWIN, et al., Appellants,**

v.

**Karen FISCHER–SMITH and Patricia Hall, Respondents.**

**No. SD 30235.**

Missouri Court of Appeals,
Southern District,
Division Two.

July 6, 2010.

Paul A. Agathen, Washington, MO, Appellants.

Karen Fischer–Smith, Apache Junction, AZ, Patricia Hall, Warminster, PA, pro se.

DANIEL E. SCOTT, Chief Judge.

*People write lots of nasty stuff about each other and publish it on the Internet. Sometimes the targets of these publications sue for defamation. Usually the targets want to sue at home and most of the time the defendants live elsewhere. Those who then find themselves defending libel actions brought in other states often move to dismiss on the ground that the court lacks personal jurisdiction. This basic scenario has been played out in dozens of reported cases.*

*One might think that by now there would have emerged a clear rule on whether the target can sue at home or not. However, there is no clear rule; in fact, there is not even really a clear majority position.... Moreover, the variables on which the outcome depends seem to vary from court to court and case to case.*[1]

This describes the situation before us, which apparently presents issues of first impression in our state. In dismissing the underlying action, the trial court found that even if the nonresident defendants[2] used a website to libel plaintiffs in Missouri, they lacked "the minimum contacts necessary under the due process clause to

---

1. Patrick J. Borchers, *Internet Libel: the Consequences of a Non–Rule Approach to Personal Jurisdiction,* 98 Nw. U.L.Rev. 473 (2004)(internal citation omitted).

2. We will refer to the parties as they were in the trial court, *i.e.,* appellants as "plaintiffs" and respondents as "defendants."

establish personal jurisdiction by the courts of Missouri."

Our review is *de novo*. *Bryant v. Smith Interior Design Group, Inc.*, 310 S.W.3d 227, 230–31 (Mo. banc 2010). We assume the petition's allegations are true and determine if they show sufficient Missouri contacts to satisfy due process.[3] *Id.*

## Facts and Background

Plaintiffs are Missouri residents doing business as "Whispering Lane Kennel" near Ava, Missouri. They breed and sell dogs, exhibit them at American Kennel Club shows, and board and show client dogs for pay. Plaintiffs work primarily with the Chinese Crested breed and have won various awards, including "Best of Breed" at the Westminster Dog Show in New York City. Defendants Fischer–Smith and Hall, who live in Arizona and Pennsylvania respectively, show and sell Chinese Cresteds in competition with plaintiffs.

The jurisdictional issue hinges on plaintiffs' allegations that defendants libeled them via an internet website: www.stop-whisperinglane.com ("the website"). Defendant Fischer–Smith bought the website name and, with defendant Hall's aid and assistance, created and used the website to malign and damage plaintiffs and their business.

The website could be viewed by anyone with internet access. Its homepage, titled "STOP–WHISPERING LANE KENNEL," said the kennel was in Ava, Missouri, and named three plaintiffs as owners.[4] We need not further describe the website content since defendants have not cross-appealed the finding that plaintiffs' libel allegations are adequate.

Google searches for the name of plaintiffs' kennel returned links to the website, which received some 2,500 "hits" or visits from internet users in one year. At least 25 hits were by Missouri residents involved in the dog business as owners, breeders, and/or exhibitors.

Plaintiffs sued defendants in Missouri on libel and other tort theories. Defendants moved to dismiss for lack of personal jurisdiction. The trial court expressed doubt about the jurisdictional allegations and allowed plaintiffs to replead. Defendants again sought dismissal, which was granted. The trial court found the petition adequately alleged "that both defendants committed libel in Missouri," but not "the minimum contacts necessary under the due process clause" for long-arm jurisdiction.

Plaintiffs' appeal raises three points. Point II addresses their principal claims for reversal, which hinge primarily on what now is known as the "effects" test of *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), with its divergent and somewhat irreconcilable interpretations by lower courts. We consider it first.

## *Calder* and the Effects Test

In *Calder*, actress Shirley Jones filed suit in California, where she lived, against the author and editor of an unsavory National Enquirer story. The defendants lived in Florida and moved to dismiss for lack of personal jurisdiction. The Supreme Court unanimously found that the

---

3. Ordinarily, we also would decide if the petition invoked our long-arm statute, RSMo § 506.500. *Bryant, supra.* We need not do so here because defendants did not cross-appeal the ruling that they committed a tortious act (libel) in Missouri. Missouri exercises long-arm jurisdiction as broadly as due process allows to reach extraterritorial acts producing tortious consequences here. *Bryant, supra.*

4. The fourth plaintiff, a 15–year–old, was not mentioned by name. No one claims this impacts our jurisdictional analysis.

defendants were "primary participants in an alleged wrongdoing intentionally directed at a California resident, and jurisdiction over them is proper on that basis." 465 U.S. at 790, 104 S.Ct. 1482.

The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered. Jurisdiction over petitioners is therefore proper in California based on the "effects" of their Florida conduct in California.

. . .

[P]etitioners are not charged with mere untargeted negligence. Rather, their intentional, and allegedly tortious, actions were expressly aimed at California. Petitioner South wrote and petitioner Calder edited an article that they knew would have a potentially devastating impact upon respondent. And they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and in which the *National Enquirer* has its largest circulation. Under the circumstances, petitioners must "reasonably anticipate being haled into court there" to answer for the truth of the statements made in their article. An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California.

*Id.* at 788–90, 104 S.Ct. 1482 (citations omitted).

 This "targeting" of intentional and allegedly tortious activity toward a foreign state "has come to be known as the 'effects' test for establishing specific jurisdiction."[5] Scott T. Jansen, *Oh, What A Tangled Web . . . The Continuing Evolution of Personal Jurisdiction Derived from Internet–Based Contacts,* 71 Mo. L.Rev. 177, 184 (2006). As the Seventh Circuit recently put it, "*Calder* thus suggests three requirements for personal jurisdiction in this context: (1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Tamburo v. Dworkin,* 601 F.3d 693, 703 (7th Cir.2010).[6] It is

---

5. Personal jurisdiction over nonresidents can be either general or specific. A court has "general jurisdiction" over out-of-state parties whose forum connections are systematic, continuous, and substantial enough to justify personal jurisdiction on any cause of action, even if unrelated to the defendant's forum contacts. By contrast, a court exercises "specific jurisdiction" over an out-of-state defendant " 'in a suit arising out of or related to the defendant's contacts with the forum.' " *Bryant,* 310 S.W.3d at 232 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).

6. Not all courts and cases describe the effects test the same way. For example, the Third Circuit described the last two elements as "(2) The plaintiff *felt the brunt of the harm in the forum* such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort" and "(3) The defendant *expressly aimed his tortious conduct at the forum* such that the forum can be said to be the focal point of the tortious activity." *Remick v. Manfredy,* 238 F.3d 248, 258 (3d Cir.2001). For a discussion whether the "brunt" of the harm must be felt in the forum state, *see Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,* 433 F.3d 1199, 1206–07 (9th Cir.2006).

"reasonably straightforward" to extract these rules from *Calder*, but applying them to internet tort cases "is more challenging." *Id.*

Indeed, "the body of law surrounding Internet personal jurisdiction remains unquestionably vague." Teresa J. Cassidy, *Civil Procedure–Effects of the "Effects Test": Problems of Personal Jurisdiction and the Internet; Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir.2008), 9 Wyo. L.Rev. 575, 594 (2009). Although cases invariably hinge on federal due process, the Supreme Court has never directly ruled on such a case. Kyle D. Johnson, *Measuring Minimum Contacts over the Internet: How Courts Analyze Internet Communications to Acquire Personal Jurisdiction over the Out–of–State Person*, 46 U. Louisville L.Rev. 313, 323 (2007). Many internet cases cite *Calder*, which was not an internet case, and the Supreme Court declined the chance to consider it in an internet setting. *See Young v. New Haven Advocate*, 315 F.3d 256, 262–64 (4th Cir.2002), *cert. denied*, 538 U.S. 1035, 123 S.Ct. 2092, 155 L.Ed.2d 1065 (2003). Missouri's only "website" case found minimum contacts,[7] but even plaintiffs distinguish it and call it "of little value here."

Since we do not have definitive guidance or controlling authority, we read cases far and wide, federal and state, reported and unreported,[8] especially the latest decisions. One thing we found is that cases rarely turn on the first or third elements described in *Tamburo* (*i.e.*, that the defendants acted intentionally, knowing the plaintiffs would feel the effects in the forum state). The battle generally involves the second element—commonly called "express aiming" or "targeting"—and the same can be said for this case.

### Express Aiming

Unfortunately, narrowing the fight to this issue hardly solves the problem since there are at least three judicial views about it. "To some courts, 'targeting' . . . only indicates an effort to reach an individual in the forum. To others, it may require a finding of intent to target the forum state itself. To still others, 'targeting' may only require foreseeability of effects within the forum, as based on other non-Internet connections." Cassidy, *supra*, 9 Wyo. L.Rev. at 592 (footnote references omitted).

To elaborate, "where the *Calder* test has been applied, courts have evidenced considerable confusion as to the meaning of its express aiming or intentional targeting requirement." C. Douglas Floyd & Shima Baradaran–Robison, *Toward A Unified Test of Personal Jurisdiction in an Era of Widely Diffused Wrongs: The Relevance of Purpose and Effects*, 81 Ind. L.J. 601, 618 (2006).

> Obviously, the test focuses on a defendant's purpose or intent, but what kind of purpose and what sort of intent? The Supreme Court's opinion in *Calder* gives very little guidance on this question. In holding that the individual defendants in that action "knew" that the brunt of the harm caused by their allegedly defamatory article would be felt by the plaintiff in California, the court did not clearly indicate whether a *desire or purpose* to harm the plaintiff in California was required, or whether it was sufficient that defendants merely were *aware* that such harm would occur there, or whether ju-

---

**7.** *See State ex rel. Nixon v. Beer Nuts, Ltd.*, 29 S.W.3d 828 (Mo.App.2000).

**8.** Despite their limited precedential value, we found several unreported federal district cases helpful for their collection and analysis of reported cases.

risdiction should be sustained if defendants merely *should have been aware* that the primary impact of their conduct would occur in California. Nor did the Court indicate whether purpose or knowledge that a particular plaintiff would suffer harm in the state was required, or whether it was sufficient that the defendants were or should have been aware that some industry or person might suffer predictable harm there as a result of their conduct.

These ambiguities have led to widespread divergence among the lower courts. Some courts have suggested that something close to a subjective purpose or desire to harm the plaintiff in the forum state is required. Most courts have focused on the defendants' awareness that their conduct would cause harm in the forum state—an interpretation that most closely corresponds with the Supreme Court's language in *Calder*. However, some courts have gone further by indicating that the critical issue is not whether the defendants were in fact aware that their tortious conduct would have effects in the forum, but only whether they should have been aware that it would.

And if awareness is the key, awareness of what? Is it sufficient that the defendants are or should be aware that the primary effects of their conduct would be felt by the plaintiff in a particular state? Many courts have stated that such awareness is not alone sufficient to satisfy *Calder*'s express aiming requirement, and that something more must be required before the express aiming or targeting requirement is met. However, these courts do not clearly define what else is required beyond a defendant's awareness that its conduct will have a substantial or primary impact on the plaintiff in a particular state. But even on this point, a minority view holds that "there can be no serious doubt" after *Calder* that the state in which the victim of a tort suffers injury can exercise personal jurisdiction over the defendant.

*Id.* at 618–20 (footnote references omitted).

We choose not to discuss every viewpoint and judicial opinion—plaintiffs' initial brief in this court addressed some 70 cases on these issues alone—or weigh in on various proposals for a decisional model to fit all situations. Our more modest goal is to properly review the case before us and let others ponder the grand scheme of things.

For purposes of this opinion, therefore, we focus on *Tamburo*, which was decided three months ago and reflects views that we share. Interestingly enough, it also involved the dog breeding business.

### *Tamburo v. Dworkin*

Tamburo lived and worked in Illinois. He designed software for dog breeders and incorporated data from the websites of breeders in Colorado, Michigan, and Ohio, who responded by posting statements on their websites "accusing Tamburo of 'theft,' 'hacking,' and 'selling stolen goods,' and calling on readers to boycott his products. They also posted Tamburo's Illinois address on their websites and urged readers to contact him to harass him and otherwise complain." 601 F.3d at 698. Tamburo sued in tort in an Illinois federal court, which dismissed for lack of personal jurisdiction. Citing "*Calder*'s 'express aiming' test for personal jurisdiction in intentional-tort cases" (*Id.* at 697), the Seventh Circuit reversed, finding these defendants [9] had purposely directed their conduct at Illinois.

---

9. There also were Canadian and Australian defendants as to whom personal jurisdiction

As in our case, the "key question" in *Tamburo* involved the defendants' "minimum contacts" with the forum state. *Id.* at 700–01 (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). "Stated differently, each defendant must have purposely established minimum contacts with the forum state such that he or she 'should reasonably anticipate being haled into court' there." *Id.* at 701 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

■ Also as in our case, the claim was one of specific personal jurisdiction,[10] which is appropriate if (1) the defendant purposefully directed activities at the forum state or purposefully availed himself of the privilege of conducting business there, and (2) the alleged injury arose out of the defendant's forum-related activities. *Id.* at 702 (citing *Burger King,* 471 U.S. at 472, 105 S.Ct. 2174). The exercise of specific personal jurisdiction must also comport with traditional due process notions of fair play and substantial justice. *Id.* (citing *Int'l Shoe,* 326 U.S. at 316, 66 S.Ct. 154).

■ Again like our case, *Tamburo* "primarily concern[ed] the question whether the defendants 'purposefully directed' their conduct at the forum state." *Id.* This purposeful-direction inquiry " 'can appear in different guises.' " *Id.* (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.,* 514 F.3d 1063, 1071 (10th Cir.2008)). In contract cases, it often turns on whether the defendant "purposefully availed" himself of the privilege of doing business in the forum. *Id.* For intentional torts, however, "the inquiry focuses on whether the conduct underlying the claims was purposely directed at the forum state." *Id.* (citing *Calder,* 465 U.S. at 790, 104 S.Ct. 1482). *Calder* provides "contours for the 'purposeful direction' requirement in the context of a suit alleging intentional torts," (*Id.* at 702) and suggests the three-element jurisdictional test noted above.[11] *Id.* at 703.

The Seventh Circuit admitted the challenge is not extracting these requirements from *Calder,* but applying them to specific internet tort claims. *Id.* Indeed, the court discussed federal circuit splits on at least three aspects of the express-aiming inquiry [12] and a three-way circuit split on a fourth jurisdictional issue.[13] At bottom, however,

> the individual defendants purposely targeted Tamburo and his business in Illinois with the express goal of inflicting commercial and reputational harm on him there, even though their alleged defamatory and otherwise tortious statements were circulated more diffusely across the Internet. Tortious acts aimed at a target in the forum state and undertaken for the express purpose of causing injury there are sufficient to

---

involved, at least in part, different or additional facts. Thus, we do not consider or cite those rulings.

10. *See* note 5, *supra.*

11. *See* text accompanying note 6, *supra.*

12. These include (1) whether express aiming considers *all* jurisdictionally relevant intentional acts of the defendant, or only those alleged to be tortious or otherwise wrongful (*Id.* at 704); (2) the proper way to understand *Calder*'s emphasis on the defendant's knowledge of where the "brunt of the injury" would be suffered (*Id.* at 706 n. 9); and (3) whether express aiming is broadly met by targeting a known resident of the forum state, or more narrowly, if the forum state must be the focal point of the tort (*Id.* at 704–07).

13. That is, the plaintiff's injury must "arise out of" or "relate to" the defendant's forum-related activity. *Id.* at 708–09.

satisfy *Calder*'s express-aiming requirement.

*Id.* at 707–08, citing Eighth and Tenth Circuit precedent that actions "performed for the very purpose of having their consequences felt in the forum state" constitute Calder targeting. *See Dudnikov*, 514 F.3d at 1078; *Finley v. River N. Records, Inc.*, 148 F.3d 913, 916 (8th Cir.1998). Moreover,

> [u]nder even the most rigorous approach to the determination of whether the plaintiff's injury "arises out of" the defendant's contacts with the forum state, Tamburo's injury clearly does. We have already concluded that [the defendants] expressly aimed their allegedly tortious conduct at Tamburo and his Illinois-based business for the purpose of causing him injury there; these "contacts" with the forum state are the cause in fact and the legal cause of Tamburo's injury. That is, Tamburo's claims arise directly out of the individual defendants' contacts with Illinois.

*Id.* at 709. There is no meaningful difference between *Tamburo* and this case, and the same result follows here. Defendants' contacts were constitutionally sufficient for the trial court to exercise personal jurisdiction over them.

### Why *Tamburo?* Weighing the Options

Our focus on *Tamburo* does not mean it is the gold standard for all cases and situations. It is more accurate to say it was handed down while this appeal was pending, reflects the cases and reasoning we found most persuasive from our own research, and applies them to facts similar to

ours. We have treated *Tamburo* as a template of sorts, directing readers to its analysis in lieu of crafting our own.

Yet the case law goes in all directions and we might have papered another result as easily. It is fair, therefore, to ask how and why we came to our conclusions. Here are five of the reasons.

■ First, we are not persuaded by the view that *Calder* cannot be satisfied, even by targeting a known forum resident and causing injury in the forum, unless the defendant also intended to target the forum state itself. This seems inconsistent with what the Supreme Court said in *Burger King:*

> Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this "fair warning" requirement [of the Due Process Clause] is satisfied if the defendant has "purposefully directed" his activities *at residents of the forum,* . . . and the litigation results from alleged injuries that "arise out of or relate to" those activities. . . .

> · · ·

> We have noted several reasons why a forum legitimately may exercise personal jurisdiction over a nonresident who "purposefully directs" his activities *toward forum residents . . . .*

471 U.S. at 472–73, 105 S.Ct. 2174 (citations omitted, emphasis ours).[14]

■ Second, even if *Calder* does require targeting of both plaintiffs and Missouri, the website proclaimed that:

---

14. *Burger King* also undercuts cases on the other end of the spectrum that require little more than foreseeability of harm in the forum:

> Although it has been argued that foreseeability of causing *injury* in another State should be sufficient to establish such [mini-

> mum] contacts there when policy considerations so require, the Court has consistently held that this kind of foreseeability is not a "sufficient benchmark" for exercising personal jurisdiction.

> *Id.* at 474, 105 S.Ct. 2174 (citations omitted).

MO has the most LAX laws when it comes to the safety and concern of animals being housed and kept for breeding. This is why MO is knows [sic] as the Puppy Mill capitol of the WORLD. Commercial dog breeders from other parts of the U.S. often relocate to MO to make their living off of dogs and puppy sales as there are few laws to force them to raise the animals in a clean, healthy environment. There are more breeders in MO than in most other states combined! Because there are not enough state inspectors many breeders are able to breed and raise dogs in filthy, disgusting conditions.

If plaintiffs must show both targeting of this state and of themselves to establish jurisdiction (which we do not believe), these statements serve that purpose.

Third, we are not overwhelmed by the occasionally-expressed concern about internet activities exposing a defendant to jurisdiction in many forums.

A tortfeasor who mails a thousand bombs to recipients in one state, and one to recipients in each of the other forty-nine states, should not be relieved from geographic responsibility for the consequences of his actions in each of those states simply because he is subject to suit everywhere, or because his conduct has a uniquely intensive relationship with a single state.

Floyd & Baradaran–Robison, *supra*, 81 Ind. L.J. at 659.

■■■ Fourth, our Missouri Supreme Court recently expressed a broad jurisdictional view of communication that gives rise to intentional tort claims. "Where 'the actual content of communications with

a forum gives rise to intentional tort causes of action,' as Mr. Bryant's petition alleges here, 'this alone constitutes purposeful availment.'" *Bryant*, 310 S.W.3d at 235 (quoting *Lewis v. Fresne*, 252 F.3d 352, 359 (5th Cir.2001)). *Compare Dudnikov*, 514 F.3d at 1078 (acts performed for purpose of having consequences felt in forum "are more than sufficient" for purposeful direction per *Calder*, also quoted in *Tamburo*, 601 F.3d at 707–08).[15]

Fifth, to tweak an observation from *Revell v. Lidov*, 317 F.3d 467, 476 (5th Cir. 2002), if you pick a fight in Missouri, you can reasonably expect to settle it here.

**Fair Play and Substantial Justice**

■■■ Since defendants' contacts are constitutionally sufficient, jurisdiction is appropriate unless it offends traditional notions of fair play and substantial justice. *Int'l Shoe*, 326 U.S. at 316, 66 S.Ct. 154. This is a much easier call and requires no extended discussion. "An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California." *Calder*, 465 U.S. at 790, 104 S.Ct. 1482. This case is no different. Due process is not offended if Missouri exercises jurisdiction over defendants in this case.

**Conclusion**

Point II is well taken. Reversal and remand on that basis means we need not address other claims of error.[16] Finally, we reiterate that we have not sought to tease out any universal rule about personal jurisdiction in internet cases. We merely decided this case.

---

15. The trial court, of course, did not have the benefit of either *Bryant* or *Tamburo*, which were decided after the dismissal below.

16. Plaintiffs claim defendants waived any jurisdictional objections (Point I) and the trial court erred in denying jurisdictional discovery (Point III). We would deny both points if we had to reach them.

We reverse the judgment of dismissal and remand the case for further proceedings.

RAHMEYER and FRANCIS, JJ., concur.