

# In the Missouri Court of Appeals
# Eastern District

### DIVISION TWO

| | | | |
|---|---|---|---|
| K.M.R., | ) | No. ED107247 | |
| | ) | | |
| Respondent, | ) | Appeal from the Circuit Court | |
| | ) | of the City of St. Louis | |
| vs. | ) | | |
| | ) | Honorable Lynne R. Perkins | |
| D.G.B., II, | ) | | |
| | ) | | |
| Appellant. | ) | FILED: September 24, 2019 | |

## Introduction

Appellant D.G.B., II ("D.G.B.") appeals from the judgment of the trial court granting a full order of protection against him. On appeal, D.G.B. argues that the trial court lacked personal jurisdiction due to improper service of process under Section 455.040[1] and that the trial court lacked substantial evidence to support its conclusion that D.G.B. had committed stalking under Section 455.010. Because the record does not show that D.G.B. received proper service of process, we hold that the trial court improperly exercised personal jurisdiction over D.G.B. Accordingly, we reverse the judgment of the trial court and remand with directions to dismiss for lack of personal jurisdiction.

---

[1] All Section references are to RSMo (2016), unless otherwise indicated.

<u>Factual and Procedural History</u>

In September 2018, K.M.R. sought both an ex parte order of protection and a full order of protection against her neighbor D.G.B. K.M.R.'s petition (the "Petition") consisted of fourteen pages: five pages were a court form (one page of which expressly stated that it should not be served), and nine pages were appended hand-written and typed materials describing various incidents between D.G.B. and either K.M.R. or other neighbors. Several pages of the Petition contained K.M.R.'s personal information, such as her address, date of birth, home phone number, and place of employment.

Subsequently, the trial court issued an ex parte order of protection (the "Protection Order") against D.G.B. The Protection Order consisted of three pages: two pages were a form completed by the trial court and the third page was a return form to be completed at a later time by whoever effected service. Aside from her full name, the Protection Order did not contain any of K.M.R.'s personal information.

A few days later, a police officer filed a return (the "Return") stating that process was served on D.G.B. on September 8, 2018. The Return consisted of four pages which, except for a few additions, were identical to the Protection Order. The additional page was nearly blank, appearing to be the reverse side of one of the other pages of the Protection Order. The police officer did not complete the return form provided on page three of the Protection Order; rather, the police officer affixed text completed in part by stamp and in part by hand providing that the police officer delivered a "copy of the same to the within named defendant [D.G.B.]." Certain information requested by the return form, such as the method of service, was not specified.

D.G.B. moved to quash service in the trial court. D.G.B. did not dispute that he was served the Protection Order. Rather, D.G.B. stated that he was not served the Petition as required by Section 455.040.2.

2

The trial court held a hearing on the motion to quash to determine what documents had been served on D.G.B. The first witness to testify was D.G.B.'s father ("Father"), who lived with D.G.B. at the time. Father testified that two police officers approached D.G.B. and Father's home and placed some papers in their mailbox. One of the police officers informed Father that they had properly served the Protection Order. Father then retrieved the papers from the mailbox, which only consisted of two or three pages containing what he described as "order of protection information."

K.M.R. testified next. K.M.R. called the police on September 8 because she believed D.G.B. was violating the Protection Order. K.M.R. possessed two copies of what she identified as the Petition because "when you get a petition you get two copies" and "one is a police copy." Police officers arrived, and one of the police officers took a copy of the Petition. The police officer told K.M.R., "I'm only going to give [D.G.B.] the top three or four sheets because the rest of it has sensitive information and I don't want [D.G.B.] to have that sensitive information." The sensitive information referred to by the officer included K.M.R.'s address. K.M.R. handed the police officer three or four pages, which she testified included the list of incidents based on which the trial court granted the Protection Order. Due to their proximity as neighbors, K.M.R. overheard the police officer tell Father that D.G.B. was being served and that the police officer was placing the pages in Father and D.G.B.'s mailbox.

Following the taking of evidence, the trial court acknowledged uncertainty about what documents were served on D.G.B.:

> I don't know what was served upon [D.G.B.]. While [K.M.R.] did indicate that she believes the [police] officers took three or four pages to serve him with, I don't know what three or four pages that the [police] officers took.

The trial court then commented on the Return and Father's testimony:

3

And to be honest with you I have [the Return] from the [police officer] indicating that proper service was had. I don't believe [Father] when he indicates that [D.G.B.] was not there on that particular day, which brings into question his credibility as to what [Father] did or did not take from the [police officer].

The trial court concluded:

I believe the proper protocol would have been to call the [police officer] in question to give evidence as to what they did or did not do on that particular day. For those reasons I'm going to deny the Motion to Quash and move forward with the [P]etition.

The trial court proceeded with the hearing for the full order of protection. At its conclusion, the trial court expressly deemed K.M.R. a credible witness and entered a full order of protection. D.G.B. now appeals.

## Points on Appeal

D.G.B. raises two points on appeal. Point One argues that the trial court lacked personal jurisdiction over D.G.B. because he did not receive proper service of process under Section 455.040.2. Point Two contends the trial court lacked substantial evidence to support its conclusion that D.G.B. had committed stalking under Section 455.010.

## Standard of Review

We review the determination of personal jurisdiction de novo as a question of law. Killingham v. Killingham, 530 S.W.3d 633, 635 (Mo. App. E.D. 2017) (citing Bate v. Greenwich Ins. Co., 464 S.W.3d 515, 517 (Mo. banc 2015)). However, where issues of personal jurisdiction present mixed questions of law and fact, we review the legal conclusions de novo and defer to the trial court's assessment of the evidence, including credibility determinations. Pearson v. Koster, 367 S.W.3d 36, 44 (Mo. banc 2012) (per curiam) (internal citations omitted).

## Discussion

Point One reasons that the trial court lacked personal jurisdiction over D.G.B. due to improper service of process. Specifically, D.G.B. posits service was improper because D.G.B.

4

did not receive the Petition as required under Section 455.040.2.  If the trial court lacked personal jurisdiction over D.G.B., then the trial court lacked the authority to adjudicate the proceeding seeking the order of protection.  See Worley v. Worley, 19 S.W.3d 127, 129 (Mo. banc 2000) (per curiam) (internal citation omitted).

"Proper service of process is a prerequisite to personal jurisdiction." Killingham, 530 S.W.3d at 635.  With regard to an order of protection, Section 455.040.2 provides, in relevant part:

> The court shall cause a copy of the petition and notice of the date set for the hearing on such petition *and* any ex parte order of protection to be served upon the respondent as provided by law or by any sheriff or police officer at least three days prior to such hearing.

(Emphasis added).  Similarly, Rule 54.04[2] provides that "[a] copy of the summons and petition shall be served *together* except when service is by publication." (Emphasis added).  Actual notice does not cure a failure to serve process in the manner prescribed by the relevant statute or rule.  Worley, 19 S.W.3d at 129 (internal citations omitted).  A motion to quash for lack of personal jurisdiction places the burden to make a prima facie showing of personal jurisdiction on the complaining party.  Moore v. Christian Fidelity Life Ins. Co., 687 S.W.2d 210, 211 (Mo. App. W.D. 1984) (internal citation omitted); see also Bryant v. Smith Interior Design Group, Inc., 310 S.W.3d 227, 231 (Mo. banc 2010) (internal citation omitted).

Additionally, regarding the return of service, every police officer serving process within the state shall make a return in writing including the time, place, and manner of service.  Rule 54.20(a)(1).  Such returns "shall be considered prima facie evidence of the facts recited therein." Rule 54.22(a).  "To impeach a return of service there must be clear and convincing evidence corroborating the denial of the party alleged to have been served[.]" Cook v. Polineni, 967

---

[2] All Rule references are to Mo. R. Civ. P. (2018).

S.W.2d 687, 690 (Mo. App. E.D. 1998).  Evidence is clear and convincing when it leaves us with an "abiding conviction that the evidence is true."  Greeno v. State, 59 S.W.3d 500, 505 (Mo. banc 2001) (internal citation omitted).

Under Section 455.040.2, proper service on D.G.B. required service of both the Petition and the Protection Order.  The requirements of Section 455.040.2 are mandatory.  The record before us compels a finding that the trial court lacked personal jurisdiction because D.G.B. was not served the Petition as required by statute.

We reject the trial court's sole reliance on the Return to find that the Petition was properly served in light of the undisputed testimony that only three or four pages of unknown contents were served on D.G.B.  First, we dismiss the suggestion that the Return constitutes prima facie evidence showing D.G.B. was served with the Petition.  See Rule 54.22.  Rule 54.22(a) provides that a return is "prima facie evidence of the facts recited therein."  The Return at issue states only that D.G.B. was delivered "a copy of the same."  Importantly, the Return does not include the Petition, thus "a copy of the same" necessarily would not have included the Petition.  Nor does the Return affirmatively state that a copy of the Petition was served on D.G.B.  Further, even if we were to entertain the argument that the Return constituted prima facie evidence of proper service, that prima facie evidence is impeached by clear and convincing evidence that D.G.B. was not properly served.  See Cook, 967 S.W.2d at 690.

We first note that the trial court acknowledged uncertainty as to what papers D.G.B. actually received from the police officer who attempted to make service.  While some uncertainty is understandable given the facts of this case, the evidence in the record strongly suggests that the Petition was never served on D.G.B along with the Protection Order.  In particular, both Father *and* K.M.R. testified that the police officers only served between two and

6

four pages on D.G.B.  The Protection Order contained three pages and the Petition contained thirteen pages (fourteen pages minus the page intended to be excluded from service).  Even if we assume the trial court found Father completely non-credible (as it found him non-credible at least with respect to some points) and properly excluded his testimony from consideration, K.M.R.'s own testimony unequivocally confirms that the total number of pages with which D.G.B. was served was only three or four pages, far fewer than the Protection Order and Petition's combined total of sixteen pages.  See Pearson, 367 S.W.3d at 44 (internal citations omitted) (providing for deference to the trial court's credibility determinations in de novo review of mixed questions of law and fact).  Unlike Father, the trial court expressly found K.M.R. to be a credible witness. See id.

Additionally, regarding the contents of the served pages, K.M.R. testified that the police officers did not take and serve on D.G.B. at least some pages containing her personal information.  The Petition contained K.M.R.'s personal information while the Protection Order did not. The evidence logically suggests that the pages removed from the documents to be served on D.G.B. came from the Petition and not the Protection Order.  If the police officers removed all of the pages containing K.M.R.'s personal information—such as her address and place of employment—they would have removed at least six pages of the Petition, and could not have served the required thirteen pages of the Petition to D.G.B.  We recognize that K.M.R. also testified that the police officers took some pages containing the list of incidents from the Petition. Even if these pages were served on D.G.B., at most this evidence demonstrates that *some* of the Petition may have been served on D.G.B.  But Section 455.040.2 requires a *copy* of the Petition be served.  K.M.R. presents no authority, and we are aware of no authority, holding that serving a portion of the petition satisfies this statutory requirement.

7

After review of the record before us, and giving proper deference to the trial court's assessment of the evidence, we possess an abiding conviction that D.G.B. was not served with a complete copy of the Petition. See Greeno, 59 S.W.3d at 505 (evidence is clear and convincing when it leaves us with an "abiding conviction" that it is true); Cook, 967 S.W.2d at 690; Pearson, 367 S.W.3d at 44 (internal citations omitted). We do not share the trial court's reliance upon the Return filed by the serving police officer given the deficiencies of the Return. Accordingly, because the trial court erred in finding it had personal jurisdiction to issue the full order of protection against D.G.B., we reverse the trial court's judgment and remand with directions to dismiss for lack of personal jurisdiction. See Killingham, 530 S.W.3d at 635. Point One is granted. Because we hold that the trial court lacked personal jurisdiction, Point One is dispositive and we need not address the substantive issue raised in Point Two.

Conclusion

The judgment of the trial court is reversed and remanded with directions to dismiss for lack of personal jurisdiction.

_____
KURT S. ODENWALD, Judge

Philip M. Hess, P.J., concurs.
Lisa P. Page, J., concurs.

8